May it please the court, Counsel Dan Mullin, Federal Credit Office, Reno, Nevada, on behalf of Appellant Mark Russell Psick. I hope I am not out of line, but on the Zotella point, it is my recollection On the which point, I'm sorry? On the Zotella, the fast track disparities, it's my recollection that those cases do talk about it's not a unwarranted disparity under A6, and because it is not unwarranted, the judge does not have to discuss it. In Psick's case, if the statistics show that there is a 50-50 at best, below guidelines and above guidelines, there is an unwarranted disparity in a run-of-the-mill case, and Psick's case is a run-of-the-mill case, there's factually belief that that's solid. So it does have to be discussed, and it has to be discussed in a meaningful way. And there's also a circuit split on that issue, to the best of my recollection. There's at least two circuits that say that is an unwarranted disparity, and the judge does have to address the fast track disparity. On the just general Kimbrough issue, two points that I want to make is, number one, Kimbrough applies to any guideline. You can raise a Kimbrough argument to career offender, you can raise a Kimbrough argument to immigration, it doesn't necessarily have to be a 2G2 or a crack disparity. And then whether or not 2G2 is based on commission study, expertise, and empirical data, first, that's a fact question. And this court can't address that as the district court got that right as a fact question or got that wrong as a fact question. The second issue is, if it's not based on empirical data, what is required? What does the judge have to do? And Rita Kimbrough or Rita Cardi say the judge has to address that, and he has to address that in a meaningful way. So that was kind of backtracking from some of my particular case and the issues that seemed to be concerned.  And what did the district court say here specifically? The district court, in my particular case, what the district court said, and I think it is at his explanation, generally speaking, in the sentencing transcript at 51-61. And what the court says in this, generally speaking, goes through the guidelines, says there's no evidence of distribution in this case. Also says that there were multiple downloads over a period of time, that there is a concern about Federal-State disparities. There is a concern about disparities in the district, but those issues should probably more correctly be addressed to the sentencing commission, and then says that because of the multiple images, because of the images under 12, because of the sadistic images, he is going to impose a guideline. So what is your understanding that the district judge was doing with respect to him broad discretion? My understanding of what the district judge was doing, number one, didn't necessarily believe as a factual matter that this guideline was not based on empirical study. And then number two, the issue that was presented to him, the disparity issue, as a factual matter, what the judge does is in the sentencing memo, they presented the sentencing commission statistics. And the sentencing commission statistics show generally that 1,519 cases, 667 within the guidelines, majority being outside the guidelines. The judge then looked at, well, what about the 5Ks? What about the other government-sponsored? And then somehow came up with a number of 300, said there's probably about 1,000 cases then that really the government agrees with and will count those as being within the guidelines. And so there's only maybe about a third of these cases that are below the guidelines, which, again, my point is that's incorrect as a factual matter. The factual matter is that at least 50%, 51% of these cases are sent below the guidelines, and the judge has to address that and has to address that in a meaningful way. And the judge in this case, when he addressed those, which leads to our other concerns, basically said, I think the guidelines are appropriate. I think your arguments should be made to Congress and not necessarily to me. And I am relying very heavily on these guidelines. If the guidelines change, I'll be able to do that. Kagan. Well, where does he say? I'm reading through here, and I'm not finding that statement. That's what I'm trying to find, a statement about you should address it to Congress. Yeah. The court's explanation. I know that you told me what the explanation is, but I'm not finding the statement about Congress. Oh, about Congress? In EOR 16, although the guidelines are adjusted by Congress because I've relied heavily on these guidelines, this is a pretty persuasive issue for me. EOR 59, I'm not totally persuaded it descends below the guidelines. On EOR 34, I'm troubled by sweeping aside the guidelines. EOR 33, lots of these arguments should be made to Congress. EOR 33, a judge should legislate for deference to the guidelines, lots of deference. EOR 23, if the guidelines change, I would consider outlawing it because the guidelines are very important to me. EOR 22, I'm not totally persuaded these guidelines were not well thought out. Those are the areas that we rely on here. And unless the court has some specific questions, I think those are really my main points. And the court is correct. I mean, this could be decided just as a straight RETA carding, undue reliance on the guidelines, guidelines treated as the presumptive type sentence with the defendant having persuaded to set lower and not addressing a non-frivolous argument, the A6. Most of these cases run in the middle or in that sentence below. Thank you. I didn't say he was just going to follow a gall. Excuse me, Your Honor? Yes. Didn't the district court say he wasn't really going to pay attention to Kimbrough, but he was going to follow gall, which is kind of the classic case that Justice Stevens wrote? I kind of wish he did. I don't think that. He said that he wasn't persuaded to sentence below the guidelines, but he did say, I understand I do have discretion to do that. So that's the record. Good morning. May it please the Court. Good morning, Your Honor. Russell Marsh, United States. Thank you. This is the one case of these five that's not from the Central District of California. And it shows that this is an issue that's dealt with differently by different prosecutors' offices, different prosecutors, different courts, and different judges. And yet the one thing that they all come back to as a starting point is the sentencing guidelines. And that's what Judge McKibben up in Reno did in this case, is he did a classic Cardi analysis where he started with the guidelines, which were agreed, and then he went through and he applied all of the enhancements. He considered every one of the defendant's arguments. He took issue with some of the statistics, but I don't think that that's a factual finding that the Court needs to send back to question that. Was there an argument specifically, a Kemper-like argument made, not a magic horse argument, but an argument that says the guidelines are excessive and were not arrived at in the ordinary fashion? The way I read that, both at the district court level and here, is there's an argument that there's an emerging national consensus in favor of that a majority of judges are sentencing out of guidelines and, therefore, almost a guideline. It's a somewhat different argument. Pardon me? It's a somewhat different argument. Somewhat. I think it's a somewhat different argument. I don't believe that the Kemper argument was addressed specifically below, and that's why we don't have the discussion of all the circuit cases in our briefs that we haven't had. But the one thing that I see in reading through what the district court said, first of all, I still haven't found a sentence where he says they'll go down to Congress, but. I can find that for you if you give me a minute. Yes, okay. But I'd appreciate that. But second of all, what does seem contrary to that, he seems to still say, well, the commission chose this and the commission could change it, and I like the commission. And he doesn't seem to be recognizing that, in fact, the commission didn't choose these. Does that make a difference? Well, I mean, I think that that's the situation that you have when you have Kimbrough where the court, where individual courts, individual judges. No, I'm saying something else. I'm saying that the discussion here by the judge seems to be treating the – in other words, he keeps saying there are things that need to be addressed, the sentencing commission should take some consideration, what happens in individual states, the sentencing commission in the next 12 months may decide to lower the minimum range for sentences like that. And the problem is that he seems to be disregarding the fact that an awful lot of this is being dictated by Congress as to the guidelines. He seems to think that the sentencing commission actually could do these things and adjust – in other words, make the regular guidelines which actually adjust as time goes on, and in large part, they can't. Yeah. I think my only point was that I don't think that – I think the judge is acknowledging that you don't give less credence to the guidelines just because they're congressionally mandated. But what I'm saying is he didn't seem to be recognizing that they were congressionally dictated. Why does it not matter that he was treating them as if they were the ordinary guidelines which were the result of the commission's determinations about what makes sense? And he keeps referring to the commission as if the commission could adjust them. But in large part, as to the things that are being complained about, the commission can't, and he doesn't seem to know that. Well, I think part of it is he's responding to an argument that's made very early on in the sentencing hearing where a defense lawyer says, Your Honor, you know, what I'd really like to do is defer this sentencing for 12 months down the road. This sentencing took place back in January of this year. And says, I think the Sentencing Commission is going to look at these guidelines and they're going to amend them in November. Of course, that hasn't happened. And the judge at some point says, Yes, if that happens, I'd really like to get this case back and take a look at it. Of course, it hasn't happened. And, you know, we went through that type of thing with the crack guidelines recently. It could happen. I think that's what he's doing is responding to that argument. He had the defense attorney holding out that there might be a change in the commission driven. Okay. Anything else? No, I think just to sum up, I think the main argument is that you should reject I think it's something you said in the Henderson case. And this is what troubles me in terms of whether he why he was so reliant on these guidelines. He says, the defense says that it's likely the commission will take another look at the guidelines. And then he says we'll have to wait and see. There's a body of thought out there that this is an area that the sentencing commission has to take a hard look at. Now, maybe he was misled by the defendant in thinking this, but he does seem repeatedly to be regarding this as based on determinations that the sentencing commission itself made. Right. And I guess our position would be that that doesn't make a difference. And he certainly did not take the position that there was any sort of certain proof on the defense to persuade him that he repeats over and over again that he has discretion to depart downward, whether that's under Gall or under Kimbrough or all of the Supreme Court precedent in this area. I really think this was a textbook case of him following the dictates that are set forth in Carty, and he really walks through every single factor under 3553A just as he's supposed to. Thank you. Thank you very much. Thank you. Thank you, counsel. Yes? Quickly, in the sentencing memorandum, the defense counsel, defendant sentencing memorandum, does set out this kind of 2G2 point argument and cites the deconstructing the myth of the guidelines. So that issue was present. But did the defense, in fact, tell the judge that the guidelines were the commission was going to reconsider the guidelines? Said it was a possibility. And somewhat confused him for that reason? When I looked at some of these, an overall term, but possible. I mean, I think you would have to stretch to get that sort of reading. Generally speaking, I think when you read all of this and look at it all together, the judge says that he will sentence below the guidelines if the commission changes the guidelines. That's one thing. Because he is relying heavily on the guidelines, putting undue weight on the guidelines. And defense counsel has not persuaded him that the guidelines are not well thought out. So the 2G2 argument was made in the sentencing memorandum. All right. Thank you very much. The case of United States v. Pysyk is submitted. We'll go on to United States v. Garza.
judges: Fletcher B. , Berzon, Callahan